## CIRCUIT COURT OF HENRICO COUNTY

David Templeman

    v.

Muriel Templeman

### Case No. 83C296

By JUDGE E. BALLARD BAKER

### December 1, 1983

By a final decree of August 19, 1983, based on no-fault grounds this marriage was ended, leaving to the Court the matter of disposition of the property and spousal support. Temporary spousal support to be paid by David Templeman to Muriel Templeman was set in November 1982 at $500. a month, with David to pay the real estate taxes on the marital home, 6901 W. Grace Street, where Muriel is living.

In her cross-bill, Muriel asked for spousal support and a monetary award under Section 20-107.3 and counsel fees.

This marriage began May 25, 1944. There were three children, all now adult. During the marriage, David provided the income, Muriel not being employed outside the home. At the present time she is fifty-eight; he is sixty. She remains unemployed, and says she has made some effort to get a job. Age and lack of experience are factors in her not having obtained work. He has been working in a hardware store since

his business was closed down when the City of Richmond obtained the location for City purposes. David states his income at $762. a month, gross.

The first determination has to be to decide what property is marital and what is separate. Section 20-107.3 provides the rules.

Marital property is:
1) All property titled in the names of both parties; and
2) All other property acquired by each party which is not separate property.

Separate property is:
1) All property acquired by either party before the marriage; and
2) All property acquired during the marriage by bequest, survivorship or gift from a source other than the other party; and
3) All property acquired during the marriage in exchange for separate property, if it is maintained as separate property.

There is a presumption that all property acquired by either spouse during the marriage is marital property ". . . in the absence of satisfactory evidence that it is separate property."

It appears that all the property involved here was acquired after the marriage and is marital, unless there is satisfactory evidence that some items are separate.

David contends that some items of personal property were inherited from his mother or given by others. Muriel does not agree as to all these. Without attempting to recite the evidence with respect to the many items of personal property in dispute, this Court is of opinion that the sterling silver service is separate property of David, and that the coffee table, solid mahogany base with Italian imported top, is separate property of Muriel.

Everything else, regardless of how titled, is marital property, except the certificates in Southern Bank which are available to Muriel only upon the death of her mother. Until that time those funds are not to be used by Muriel.

Included in the marital property are two pieces of real estate. The marital home at 6901 West Grace Street, which has been appraised at $59,500, and river property in Essex County, appraised at $52,500 or $60,175. Only one appraiser valued both properties. The $60,175 value on the Essex County property was made by an appraiser who did not value the West Grace property. The appraiser who saw both is more likely to have accurate relative values, and the Court accepts those valuations.

Muriel wants to continue to live on West Grace Street; David hopes to retire to the Essex County property. There is no reason Muriel should not get the West Grace home and David the Essex County property.

Disposition of the personal property in the two homes is not difficult. To Muriel should go the personal property in West Grace Street, except for the sterling silver service. To David should go the personal property in the river property. The coffee table referred to earlier goes to Muriel, wherever it may be.

Section 20-107.3 permits the Court to partition marital property which is titled in the names of both parties. Consequently, this Court will partition the real property and the personal marital property located at the above places in the manner noted above.

There are three motor vehicles; a 1967 Camaro titled in David's name, but used by Muriel, a 1979 Ford and a 1969 GMC truck used by David. How these last two vehicles are titled is not clear.

The Court can not order the conveyance or partition of marital property not titled in both

names. However, it seems reasonable that David should give title to the Camaro to Muriel and that David should retain the other vehicles as his. The distribution of the balance of the marital property as discussed hereafter is based on the assumption that the parties will divide the motor vehicles among themselves in this manner.

Included in the marital property are:

1) Two savings accounts in Franklin Federal Savings and Loan, total value $9,700.
2) An account in Heritage Savings and Loan, value $450.
3) Several stocks, value $9,250.
4) A Merrill-Lynch money market, value as of November 7, 1983, $14,977.73.
5) A checking account at United Virginia Bank, value $59. as of November 7, 1983.

The evidence is that the Merrill-Lynch account was $49,000. and the United Virginia balance was $5,332. when the couple separated. Since then, David has drawn the United Virginia account down to $59. or so, using the money to pay bills. David has also drawn the Merrill-Lynch account down some $34,000. Of this, David says $17,500 was used to pay his brother a debt owing from the liquidation of their business when the City took the property. He has also used the Merrill-Lynch account to pay the $500. a month support to Muriel, withdrawing an equal sum for himself each month.

While Muriel questions any debt to the brother, David's statement on that is accepted.

Under earlier provisions of this opinion, Muriel will have the Grace Street property to live in. David will have the Essex County property to retire to some day. Each will have substantially the furnishings in each place.

Under Section 20-107.3(11) the Court seeks to arrive at a fair and equitable monetary award. Consi-

dering as best it can, the distribution noted before and the several factors in 20-107.3, this Court is of opinion that Muriel should receive a monetary award, to be paid to her from the savings accounts, the stocks, the Merrill-Lynch account and the checking account. These several items have a present value of about $34,000. This Court gives to Muriel a monetary award of $25,000 from these sources.

Unless the parties can resolve where this comes from, this Court will direct that Muriel receive the Franklin Federal, the Heritage and the Merrill-Lynch accounts. To the extent that these accounts do not equal $25,000, stock should be sold or transferred, unless David produces the difference in some other fashion.

Under 20-107.3(F), this monetary award has been reached without consideration of spousal support. That is presently $500. a month. As Muriel has asked for spousal support, that is now considered under 20-107.3(F), and 20-107.1.

Section 20-107.1 requires that consideration be given to the provisions made with respect to the marital property, along with other factors, in determining support.

Under the various factors to be considered, Muriel is clearly entitled to support. However, continuation of $500. a month is excessive in view of the monetary award and disposition of the marital property.

From the monetary award Muriel can produce income. Also, while her employment skills are limited, she appears in good health and should be able to earn something. David is earning, but unlike Muriel, has to pay rent. He will own the Essex property and can produce income from that.

Upon consideration of all the circumstances, this Court will award Muriel spousal support of $50. per week, beginning January 1, 1984. The temporary

support of $500. per month remains through December 1983.

The Court will allow counsel fees to Muriel in an amount which will be entered in the order to be presented. Counsel are requested to leave that item blank, and are invited to express their views when the order is submitted.

February 29, 1984

By letter of December 1, 1983, this Court stated its opinion on the matters at issue between David Templeman and Muriel Templeman. These matters involved distribution of the property of the parties under V.C. § 20-107.3.

David Templeman complains the distribution was not equitable because:

(1) Some items of personal property given to him by his family were considered marital and given to Muriel;

(2) Real estate assigned to Muriel had a value of $59,500.00; real estate assigned to David had a value of $52,500.00--and nothing in the award made up for this difference;

(3) Out of $34,000.00 cash, or stocks, Muriel was given a lump sum of $25,000.00.

Evidence on these issues was heard ore tenus on November 29, 1982, August 8, 1983, and November 7, 1983. A temporary support order of $500.00 a month came out of the November 29, 1982, hearing.

Depositions supporting a no-fault divorce were taken June 7, 1983, and a final decree, reserving spousal support was entered on August 19, 1983.

(1) Personal Property.

Both parties filed a statement of what each felt appropriate for a lump-sum settlement, this including personal property claimed to be marital or separate. These were considered at the November 7, 1983, hearing.

Muriel denied that all items claimed by David as his separate property were given to him alone. David listed some 16 items, with total value of $3,365.00, including a sterling silver service at $1,500.00, as separate property.

Upon review of my notes, and upon comparison of the list "Separate Property of Husband" filed by David with the list "Muriel Nash Templeman--Grace Street Furniture" and "Essex County Furniture," it does indeed appear that the following items are properly David's separate property: Clock on mantel, old pistol, secretary and chair, round mahogany table, hall rack, father's watch, crystal odds and ends, four old spring steel outdoor chairs, and mahogany bedroom suit. These, having a value by David's figures, of $1,400.00 plus the sterling silver service, $1,500.00, should go to David. All other items on David's separate property list, valued at $465.00, are not shown to be separate.

All other personal property in the Grace Street house is marital and goes with the house.

Values placed on the personal property by David and Muriel are not given substantial weight by this Court. However, based on those values, it appears that David winds up with Separate Property worth $2,900.00 and Muriel with Separate Property worth $900.00. As to Marital Property, David, getting things in the Essex County property, has property worth $10,650.00, Muriel's valuation, or $1,850.00, David's valuation. The personal items in Grace Street going to Muriel have a value of $8,750.00, according to David, $6,550.00, according to Muriel.

In addition, Muriel gets the '67 Camaro and David gets the GMC truck and the '69 Ford. David says the Camaro is worth $2,500.00; the GMC is worth

$3,000.00. David assigned no value to the Ford, except he would not trade it for the '67 Camaro.

For what it is worth, David gets marital personal property worth:

Motor vehicles - $5,500.00
Essex County - $1,850.00 (his value); $10,650.00 (her value).

Muriel gets marital personal property worth:

Motor vehicle - $2,500.00
Grace Street - $8,100.00 (his value); $6,550.00 (her value).

From the values placed on the marital personal property, David gets items worth from $7,350.00 to $16,150.00; Muriel gets items worth from $9,050.00 to $10,600.00.

In the area of separate property, David's has a value of $2,900.00; Muriel's $1,365.00.

(2) Real Property.

The December 1 opinion said that David should get the Essex County property and Muriel the Grace Street property.

Nobody objects to this. However, David takes the position that the Grace Street property is appraised at $59,500.00 and the Essex County property at $52,500.00 and complains that Muriel thus gets $7,000.00 more value than he does, without any offsetting advantage to him.

Grace Street is assessed in Henrico County at $46,300.00. Essex County is assessed at $42,400.00. Grace Street is a two-bedroom home; Essex County is a three-bedroom river cottage which David wants to retire to when he reaches 62. While public water and sewer are available to Grace Street, they are not connected as the Templemans have never paid the con-

nection fee. The cost of this is estimated at $3,525.00. Essex County has no public water or sewer available.

These people lived in the Grace Street property and used Essex County as a river cottage, rest and relaxation and recreation. At the August 1983 hearing, Muriel testified that she had been to Essex County every weekend that Summer, going with one of her sons. When title to Essex County goes to David, this pleasure will not likely be available.

Under the circumstances, the award of the Essex County river cottage to David, without charging the $7,000.00 difference in value to Muriel and making up for it in some other fashion, is not inequitable. Appraisals are not necessarily values; there is no assurance either property would sell at the appraised price.

David is getting the place he wants, and Muriel is getting where she wants to live but is losing forever the right to spend time at the river cottage she enjoyed for many years.

(3) Monetary Award.

David complains that the December 1 letter provides for a monetary award to Muriel of $25,000.00 out of savings accounts, stocks, a money market account at Merrill-Lynch and a checking account which totals $34,436.00 in November 1983.

When these parties separated in May 1982, these accounts came to a considerably greater amount. The checking account was $5,332.49, Merrill-Lynch was $47,322.00, and two savings accounts in Franklin Federal came to about $10,000.00. Stocks had a value of about $9,600.00, these in David's name. The checking account and Merrill-Lynch accounts were put in David's name after separation; the other accounts were in Muriel's name. All of this was marital property, though Muriel saw that $8,000.00 in Franklin Federal was given her by David in 1974.

Three certificates in Southern Bank worth about $10,000.00 are in Muriel's name, but the evidence is that these funds are for the use and benefit of her mother during her life time.

Thus, in May 1982, it appears the total of cash, certificates and stocks which are marital property came to over $72,000.00. In November 1983 these assets were $34,000.00.

In November 1982 David was ordered to pay Muriel temporary support of $500.00 a month, beginning December 1. Until then he had been paying $50.00 a week, plus the utilities.

Between May 1982 and November 1983, David reduced the checking account from $5,332.00 to $59.00, the Merrill-Lynch account to $14,977.00. The checking account money was used to pay bills; the Merrill-Lynch account was used to repay $17,500.00 owing to David's brother, plus David also used this account to make the $500.00 per month support payments to Muriel. He also withdrew the same amount for himself.

At the time temporary support was fixed, November 1982, Muriel had income of $40.00 a month, and claimed expenses of over $600.00. David, at this time, had income from Harper Hardware of $762.67 per month, gross, plus interest income of $241.66 estimated from what he showed as a $29,000.00 money market account with Merrill-Lynch. David listed expenses, other than what he was paying Muriel, of $860.51. His net from Harper Hardware, plus his income from Merrill-Lynch, was $866.83. His income did not include any dividends from the common stock.

David proceeded to pay the support of $500.00 to Muriel by withdrawal from the Merrill-Lynch account; at the same time he withdrew $500.00 a month for himself. Thus, during the period December 1982 to November 1983, Muriel was receiving $500.00 a month, plus a small amount of interest income, against listed expenses of over $600.00; and David was receiving a

net of at least $1125.00 against expenses of $860.51. ($625.17 + $500.00, minus $1,083.18 less the $222.67 his 11-17-82 statement he was paying to Muriel.)

We thus have David using marital property to pay spousal support to Muriel, and withdrawing an equal amount for himself. During this period, based on their statements of November 1982, Muriel was short of income and David had an excess over the expenses he listed.

These payments have continued to this date. Through December 1983, David drew the Merrill-Lynch account down some $6,500.00, plus an amount for taxes on Grace Street for Muriel and drew it down $6,500.00 for himself.

David complains that it is not equitable to give Muriel $25,000.00 of the $34,000.00 left in the various accounts.

Equitable distribution does not mean equal money values. If that were so, the several factors to be considered in § 20-107.3 would be meaningless. However, responding to David's argument that Muriel, in the award of personal property and real estate, gets $11,000.00 more value than David, this is just not so. While the figures are valuations placed by the parties, as has been noted before the personal property David gets is valued between $9,250.00 and $19,050.00, while Muriel's items range between $10,415.00 and $11,965.00. It cannot be said that David's share of the personal property is inequitable.

Coming to the money accounts, we start off in May 1982, the time of separation, with over $72,000.00. David says he used some $5,000.00 to pay bills and $17,500.00 to repay a debt to his brother. This reduces the amount to about $50,000.00. David further reduced this by using $6,500.00 to meet his support and by taking $6,500.00 for himself.

This $50,000.00 was marital property. Muriel had as much right to this as David. Court notes on November 29, 1982, reflect the belief that a part of the $500.00 support would have to come from the Merrill-Lynch funds, but there was no thought that David would help himself to an equal amount.

In November 1983, David reported $15,506.00 in Merrill-Lynch. Allowing him the $17,500.00 he paid his brother from this account, there would be $25,000.00 plus income, in the account as of the end of 1983 if he had done no more than pay Muriel from that account. There was also $9,250.00 in stock in David's possession in November 1983, and about $10,000.00 in savings and checking accounts in Muriel's name, but not her separate property.

It appears inequitable to this Court to allow David to withdraw $6,500.00 from marital funds for his own use under the facts presented to this Court in the several hearings. From his testimony on November 7, 1983, that he had lived on the Merrill-Lynch money in explanation of why the Merrill-Lynch account was down to less than $15,000.00, it is apparent that he used more than $500.00 a month.

The Court will allow credit for the money withdrawn to pay the brother, and will recognize the need to use Merrill-Lynch funds to pay Muriel, but that does not reduce Merrill-Lynch from $49,000.00 to less than $15,000.00. Merrill-Lynch, with those deductions, should be about $25,000.00 at the end of 1983, plus income.

Add that $25,000.00 to the stocks of $9,250.00 and the $10,000.00 in Muriel's possession, and the marital property in this category is $44,250.00. It is from this that a monetary award is to be made.

Section 20-107.3 sets out various factors to consider. We have here a no-fault divorce, and a wife 58 years old who did not work during the marriage outside the home. Her contribution to the family through maintaining the home and helping to raise

three children leaves her with no employment experience or skills.  David is employed; Muriel has not found employment.

This Court has considered the several § 20-107.3 factors. This Court comes up with the conviction that Muriel is entitled to a monetary award of $25,000.00. This is about 56% of the $44,250.00 mentioned above.

This Court finds nothing inequitable about this. It appears necessary in order for Muriel to maintain herself and does not prevent David from maintaining himself.

As noted in the December 1 letter, Muriel will require periodic spousal support. She cannot live off the income from her monetary award. When she receives income, from whatever source, then the weekly spousal support can be reconsidered. Until then, spousal support is $50.00 a week.

The Court's letter of December 1, 1983, fixed January 1, 1984, as the beginning of the support, contemplating the other matters would be done in December. This did not happen. The defendant has, in accord with earlier orders, continued to pay $500.00 a month spousal support. Through February this would be $1,000.00.

This Court will enter an Order effective March 1, 1984, in accord with this opinion, giving David credit on the $25,000.00 monetary award of $550.00, this for the January and February payments of $500.00 he made less the $450.00 he would have had to pay on spousal support had the order been entered as of January 1. In providing the $24,450.00 David is to pay, Muriel can retain the accounts shown on counsel's November 4, 1983, letter, but the evidence before this Court is that those accounts came to $10,219.41 and that is the amount at which they should be considered. The Southern Bank certificates are not to be considered.

Attorney's fees of $1,000.00 will be allowed to counsel for Muriel, payable by David.